SABERS, Justice
(dissenting).
[¶ 123.] I respectfully dissent. South Dakota’s capital sentencing scheme prevents a defendant who pleads guilty from having the alleged aggravating circumstances found by a jury. The scheme is therefore unconstitutional under Apprendi, Ring and Blakely and the majority opinion violates canons of statutory construction by ignoring statutory language to come to the conclusion that the sentencing procedure is constitutional. I also dissent from the majority opinion’s conclusion that Piper and Page’s sentences were not disproportionate in comparison to their co-defendant, Hoadley. We should reverse and remand for re-sentencing to life in prison without the possibility of parole.
[¶ 124.] 1. South Dakota’s capital sentencing scheme in nonjury trials violates the Sixth Amendment right to a jury trial as incorporated to the states through the Fourteenth Amendment.
[¶ 125.] Apprendi v. New Jersey held: Other than the fact of a prior conviction, any fact that increases the penalty for a *779 crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.
530 U.S. 466, 490, 120 S.Ct. 2348, 2362,147 L.Ed.2d 435.
[¶ 126.] In Ring v. Arizona, the Court applied its holding in Apprendi to hold that a capital defendant’s Sixth Amendment rights were violated when the judge “imposed a sentence greater than the maximum he could have imposed under state law without the challenged factual finding.” Blakely v. Washington, 542 U.S. 296, 303-04, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004) (citing Ring, 536 U.S. at 603-609, 122 S.Ct. 2428, 153 L.Ed.2d 556). Specifically, under Arizona’s capital sentencing scheme, once the jury found a defendant guilty of first-degree murder, the judge was required to “conduct a separate sentencing hearing to determine the existence or nonexistence of [certain enumerated aggravating] circumstances ... for the purpose of determining the sentence to be imposed.” The judge was required to make all of the factual findings regarding the question whether there were any aggravating circumstances. The Court wrote:
Based solely on the jury’s verdict finding Ring guilty of first-degree felony murder, the maximum punishment he could have received was life imprisonment. [ ] This was so because, in Arizona, a “death sentence may not legally be imposed ... unless at least one aggravating factor is found to exist beyond a reasonable doubt.” [] The question presented is whether that aggravating factor may be found by the judge, as Arizona law specifies, or whether the Sixth Amendment’s jury trial guarantee, [ ] made applicable to the States by the Fourteenth Amendment, requires that the aggravating factor determination be entrusted to the jury. [ ]
Ring, 536 U.S. at 597, 122 S.Ct. at 2437, 153 L.Ed.2d 556. The Court held that the aggravating factor determination had to be entrusted to the jury in order to preserve defendants’ Sixth Amendment rights. Id.
[¶ 127.] In Blakely v. Washington, the defendant pleaded guilty to kidnapping his wife. 542 U.S. at 298, 124 S.Ct. at 2534, 159 L.Ed.2d 403. The facts supporting his guilty plea made him eligible for a maximum sentence of 53 months. Id. at 299, 124 S.Ct. at 2535, 159 L.Ed.2d 403. The Court sentenced him to 90 months after making a finding that he acted with “deliberate cruelty.” Id. The trial court received the authority to enhance the sentence from the Washington criminal code, which provided that a trial court was entitled to impose a sentence above the standard range if it found “substantial and compelling reasons justifying an exceptional sentence.” Id. at 299, 124 S.Ct. at 2535, 159 L.Ed.2d 403. The United States Supreme Court overturned the sentence, relying on Ring and Apprendi, stating:
Our precedents make clear [] that the “statutory maximum” for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. See Ring, at 602, 122 S.Ct. 2428 (“ ‘the maximum he would receive if punished according to the facts reflected in the jury verdict alone.’ ” (quoting Apprendi, supra, at 483, 120 S.Ct. 2348)); Harris v. United States, 536 U.S. 545, 563, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002) (plurality opinion) (same); cf. Apprendi, supra, at 488, 120 S.Ct. 2348 (facts admitted by the defendant). In other words, the relevant “statutory maximum” is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury’s verdict alone does not allow, the jury has not *780 found all the facts “which the law makes essential to the punishment,” Bishop, supra, § 87, at 55, and the judge exceeds his proper authority.
Id. at 542 U.S. 803-304, 124 S.Ct. at 2537, 159 L.Ed.2d 403 (emphasis in original). This line of cases makes clear that absent a valid knowing and voluntary waiver of the Sixth Amendment right to a jury trial, a judge may only sentence based on “the facts reflected in the jury verdict or admitted by the defendant.” In other words, in a capital case, absent valid waiver, the defendant has a right to have a jury determine the facts regarding whether there are aggravating circumstances. Allowing the court to impose the death penalty based on facts not admitted by the defendant or found by the jury is a violation of the defendant’s Sixth Amendment right to a jury trial.
[¶ 128.] Turning to South Dakota’s capital sentencing scheme, one can see that the plain language of the statute dealing with nonjury trials violates the clear principles enunciated in Apprendi Ring and Blakely.
[¶ 129.] SDCL 23A-27A-2 provides:
In all cases in which the death penalty may be imposed and which are tried by a jury, upon a return of a verdict of guilty by the jury, the court shall resume the trial and conduct a presen-tence hearing before the jury. Such hearing shall be conducted to hear additional evidence in mitigation and aggravation of punishment. At such hearing the jury shall receive all relevant evidence, including:
(1) Evidence supporting any of the aggravating circumstances listed under § 23A-27A-1;
(2) Testimony regarding the impact of the crime on the victim’s family;
(3) Any prior criminal or juvenile record of the defendant and such information about the defendant’s characteristics, the defendant’s financial condition, and the circumstances of the defendant’s behavior as may be helpful in imposing sentence;
(4)All evidence concerning any mitigating circumstances.
(emphasis added).
[¶ 130.] SDCL 23A-27A-6 provides:
In nonjury cases the judge shall, after conducting the presentence hearing as provided in § 23A-27A-2, designate, in uniting, the aggravating circumstance or circumstances, if any, which he found beyond a reasonable doubt. Unless at least one of the statutory aggravating circumstances enumerated in § 23A-27A-1 is so found, the death penalty shall not be imposed.
(emphasis added).
[¶ 131.] The majority opinion concludes that there is no “statutory impediment preventing a defendant who pleads guilty ... from exercising his right to a jury at the penalty phase.” Supra ¶ 71. However, to come to this conclusion, it is necessary to ignore pivotal language in the pertinent statutes. First, SDCL 23A-27A-2 provides for a sentencing hearing before a jury: “[i]n all cases in which the death penalty may be imposed and which are tried by a jury [.] ” (emphasis added). The jury hearing on aggravating circumstances is clearly inapplicable in nonjury cases. This interpretation is supported by the fact that the Legislature provided a different statute and procedure for sentencing in nonjury cases under SDCL 23A-27A-6. SDCL 23A-27A-6 unequivocally requires the judge to make the factual findings regarding aggravating circumstances in nonjury cases. See SDCL 23A-27A-6 (providing in part, “[i]n non-jury cases the judge shall [] designate, in writing, the aggravating circumstance or circumstances, if any, which he found beyond a reasonable doubt”).
*781 [¶ 132.] The majority opinion relies solely on the phrase, “presentence hearing as provided in § 23A-27A-2” to support its determination that a jury hearing is permitted by the statute. This reliance is appropriate only if the Court chooses to wholly ignore the plain language surrounding that phrase and the plain language of SDCL 23A-27A-2. That language makes clear that the Legislature intended that the court, not a jury, hear the evidence and make written findings regarding aggravating circumstances in nonjury cases. This is in direct contravention of the Supreme Court’s holding in Apprendi, which this Court acknowledged in State v. Hoad-ley, that:
it is unconstitutional for a [state] legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.
Apprendi, 530 U.S. at 490, 120 S.Ct. at 2363, 147 L.Ed.2d 435; Hoadley, 2002 SD 109, ¶ 32, 651 N.W.2d 249, 257.
[¶ 133.] I acknowledge and embrace the canon of statutory construction requiring this Court, whenever possible, to construe statutes so as to not violate the constitution. See majority opinion ¶ 73. However, that canon of statutory construction cannot be used by the Court to simply ignore the operative language of two statutes in order to find them constitutional. This is especially so when the Court is considering statutes dealing with the most severe penalty under the law. We should not broaden our rules of construction to the point of absurdity in an effort to drive to a desired result. Instead, we should carefully consider the plain language of the statutes and follow our constitutional duty to strike down those statutes which violate our citizens’ rights.
[¶ 134.] Lacking any statutory support for its conclusions, the majority opinion goes on to hold that the defendants waived their constitutional right to have a jury determine whether they would receive death or life in prison. This conclusion is based on the erroneous premise that the “circuit court properly presented Page [and Piper] with the option of exercising [the] right to sentencing by a jury as provided by South Dakota’s capital punishment statutory scheme.” There is no such right for defendants who plead guilty to capital crimes under the sentencing scheme. Therefore, this holding has no anchor in the law. As Page notes, “the waiver of a substantive right presupposes the existence of the right in the first place. The language of the statute expressly limits the fact-finding role to the judge in non-jury cases ... the judge ... had no authority to offer jury sentencing once [the defendants] pleaded guilty.” That the circuit court made an illusory offer of jury sentencing is no justification for upholding an unconstitutionally imposed death sentence. Therefore, under these circumstances, the aggravating factors had to be admitted by the defendant or found by a jury, not the judge, and the penalty of death was unconstitutionally imposed.
[¶ 135.] The United States Supreme Court could not have been more clear on this issue than when it stated that the right to a jury determination of the facts essential to imposition of sentencing:
is no mere procedural formality, but a fundamental reservation of power in our constitutional structure. Just as suffrage ensures the peoples’ ultimate control in the legislative and executive branches, jury trial is meant to ensure their control of the judiciary.
Blakely, 542 U.S. at 306,124 S.Ct. at 2538-39, 159 L.Ed.2d 403. The defendants’ unconstitutionally imposed sentences should be reversed and the cases remanded for re-sentencing in accordance with SDCL 23A-27A-14.
*782 [¶ 136.] In foresight, the South Dakota State Legislature has specifically provided the appropriate remedy.
[¶ 137.] SDCL 23A-27A-14 provides:
In the event the death penalty for a Class A felony is held to be unconstitutional by the South Dakota Supreme Court or the United States Supreme Court, the court having jurisdiction over a person previously sentenced to death for a Class A felony shall have such person brought before the court, and the court shall sentence such person to life imprisonment.
[¶ 138.] 2. Piper and Page’s death sentences were grossly disproportionate in comparison to Hoadley’s life sentence.[28]
[¶ 139.] Based primarily on untested, un-cross-examined and self-serving statements by Hoadley, Piper and Page, the circuit court and the majority opinion comes to the conclusion that Piper and Page were more culpable and less remorseful than Hoadley, and therefore more deserving of death. In a stunning reversal from its argument in the Hoadley case, the State now argues that Hoadley is less culpable in this horrendous crime than Piper and Page. The majority opinion relies on the tenuous reasoning that Hoad-ley did not confess to being as violent or proactive as Piper and. Page. Hoadley’s penchant for self-preservation is a shifting foundation that is utterly insufficient to support the gross disparity in sentencing of death for Piper and Page, and life for Hoadley. We should reverse the circuit court’s determination that the sentences were not grossly disproportionate.
[¶ 140.] Sifting through thousands of pages of trial transcripts, defendant statements, and investigative reports, one could write reams detailing the atrocities committed by Hoadley, Piper and Page. In the end, their individual behavior is so despicable as to be indistinguishable. Yet, the circuit court and the majority opinion parse selected facts, microanalyzing the events of the night to determine whether Piper and Page were worse than Hoadley.
[¶ 141.] The problem with this analysis is that it places this Court and the circuit court in a position of picking and choosing which untested facts to believe and then using those facts to sentence one defendant to a life sentence and two others to death.[29] Certainly, this type of fact find *783 ing is always done in determining whether there are sufficient aggravating factors to warrant imposition of the death sentence. However, the fact finders in all of these cases have already determined that the defendants had the same aggravating factors. Yet only one received mercy. All of the defendants have been found guilty of the same crimes, yet two will be put to death for those crimes. This is not a case where one defendant acted as a lookout or drove the getaway car. As the State consistently argued below, all three defendants actively engaged in the crimes that occurred on the evening Poage was murdered.
[¶ 142.] In fact, the State charged Hoadley, Piper and Page with identical acts, conduct and charges, all resulting in identical convictions. The same aggravating factors were alleged and found against all three: Hoadley, Piper and Page. There are no meaningful differences to justify life for Hoadley and death for Piper and Page. The real substantial difference was that the jury gave life to Hoadley, and the judge gave death to Piper and Page.
[¶ 143.] I respectfully submit all three, Hoadley, Piper and Page, should receive life in prison without the possibility of parole for their substantially identical acts of murder. See SDCL 23A-27A-14, supra ¶ 137.
[¶ 144.] MEIERHENRY, Justice, joins this dissent.

. Because the factors for consideration in all three cases (Piper, Page, and Hoadley) are exactly the same and the facts substantially similar, I respectfully submit the same writing, analysis and arguments in the Piper and Page cases.

. This problem is exacerbated by the circuit court’s performance on remand. For example, in Page’s case, the circuit court did not engage in true comparative analysis of the actions of Hoadley and Page. Instead, the circuit court appears to have sifted through the record and reiterated all of the facts it could find in favor of its original sentence. The findings of fact and conclusions of law do not compare the culpability of Page and Hoadley, they merely restate facts regarding Page's culpability. The majority opinion supports this improper analysis by giving deference to those findings. However, without any significant findings with regard to Hoadley’s actions before, during, and after the murder, it cannot be said that "Hoadley’s 'past records, demeanor, [and] degree of criminal involvement’ " are dissimilar enough to warrant such disparity in sentencing.
In fact, the majority opinion ignores those facts that show Hoadley's conduct to be equal or more heinous than that of Piper and Page. It does so despite the fact that the Hoadley trial and sentencing transcripts are part of the record in this appeal. Those transcripts show that Hoadley (1) wiped up the blood in the kitchen after the initial assault; (2) stabbed Poage in the throat; (3) stood on the back of Poage’s head in an attempt to drown him; (4) dropped two massive rocks on Poage's head; (5) kept property used in the murder as souve *783 nirs, including the dog leash used to bind Poage; (6) when a friend asked him about the murder, Hoadley replied, "shit happens, dude;” and (7) showed pictures of himself wearing Poage's clothes to his cellmates.